537 A.2d 65

Clinton Dennis, Appellant *v.* Texas Township Board of Supervisors, Appellee.

Argued November 16, 1987, before Judges MAC-PHAIL and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Mark R. Zimmer, Rutherford and Zimmer,* for appellant.

*Lee C. Krause, Howell, Krause and Schloesser,* for appellee.

OPINION BY JUDGE MACPHAIL, February 4, 1988:

Clinton Dennis (Appellant) appeals an order of the Wayne County Court of Common Pleas which affirmed the denial of Appellant's sewage permit application by the Respondent, Texas Township Board of Supervisors (Board). For the reasons set forth below, we affirm.

Appellant owns property in Texas Township, Wayne County, which is improved by a two-story home and

four outbuildings. The structures, which are more than one hundred and fifty years old, have no indoor plumbing or toilet facilities. On July 16, 1985, Appellant filed a permit application with the Texas Township Sewage Enforcement Officer (SEO), seeking permission to install a sewage disposal system at the property.

The SEO denied Appellant's application pursuant to regulations promulgated under the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §§750.1-750.20. *See* 25 Pa. Code §§73.11, 73.12. After a hearing, requested by Appellant, the Board again denied the permit application. On appeal to the court of common pleas, Judge ROBERT J. CONWAY remanded the case to the Board for another hearing so that a complete record of the proceedings before it could be made, pursuant to Section 553 of the Local Agency Law, 2 Pa. C. S. §553. Two hearings were held and the transcript filed with the court of common pleas.

Following oral argument before Judge CONWAY, the case was assigned to Judge HAROLD A. THOMSON, JR., who entered an opinion and order on October 14, 1986.[1] Judge THOMSON affirmed the denial of Appellant's permit application, concluding that because Appellant's property was identified on a "Flood Hazard Boundary Map," the permit was properly denied. Appellant's appeal of this order is now before us for disposition.

Appellant's first argument on appeal is that Judge THOMSON's determination did not comply with the provisions of the Local Agency Law because the opinion and order was not rendered by the judge who heard Appellant's oral argument. We do not agree. :

---

[1] The case was assigned to Judge THOMSON by the Supreme Court, upon Judge CONWAY's request, because Judge CONWAY was an acquaintance of Appellant.

Under Section 754(b) of the Local Agency Law, 2 Pa. C. S. §754(b), "[i]n the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency." In this case, a complete record was certified from the Board, pursuant to Judge CONWAY's remand order. Judge THOMSON, therefore, not only had this record before him, but also the transcript of the September 3, 1986 oral arguments before Judge CONWAY. We are satisfied that Judge THOMSON was able to "hear the appeal . . . on the record certified by the agency" and was at no disadvantage in relying on the transcript of the arguments. Appellant has not pointed to any prejudice resulting from the change of judge, and we fail to find any detriment to him.

Appellant argues, secondly, that the trial court's opinion was contrary to law in that the court erred in equating the comprehensive scheme of the Flood Plain Management Act, Act of October 4, 1978, P. L. 851, *as amended,* 32 P. S. §§679.101—679.601, with the identification by a municipality of specific flood plain areas. We also reject Appellant's argument on this issue.

The statutory scheme of flood plain management in the Commonwealth stems from the establishment in 1968 of the National Flood Insurance Program to provide federal assistance, in the form of risk-sharing with insurers, to help insure property against flood damage. *See* 42 U.S.C. §§4011-4128. Under the program, the Secretary of Housing and Urban Development[2] was to identify flood plain areas with special flood hazards and to establish flood-risk zones in the areas.[3] No federal assistance is given for acquisition or construction in an area having special flood hazards.[4]

---

[2] The program is now administered by the Director of the Federal Emergency Management Agency.

[3] 42 U.S.C. §4101.

[4] 42 U.S.C. §4012a.

Subsequent to the implementation of the federal program, our General Assembly enacted the Flood Plain Management Act (FPMA), intended in part to "[a]uthorize a comprehensive and coordinated program of flood plain management, based upon the National Flood Insurance Program. . . ." Section 103(4) of the FPMA, 32 P.S. §679.103(4). Under the FPMA, each municipality which has an area identified as subject to flooding is required to participate in the program,[5] and must adopt flood plain management regulations.[6] The municipality's regulations are then reviewed and approved by the Department of Community Affairs and the Department of Environmental Resources.[7]

A Flood Hazard Boundary Map was established for Texas Township by the Department of Housing and Urban Development, Federal Insurance Administration, on November 15, 1974. On this map, Appellant's property is within a "special flood hazard area," as confirmed by testimony before the Board. *See* Notes of Testimony from May 6, 1986 (N.T.) at 9, Reproduced Record (R.R.) at 100a.

The Township later adopted a Municipal Floodplain Management Ordinance (Ordinance) on May 16, 1983. Section 4.01(C)(3) of the Ordinance provides in part that "[n]o part of any on-site sewage system shall be located within any identified floodplain area except in strict compliance with all state and local regulations for such systems." Section 3.00 states as follows:

> The identified floodplain area shall be any area of the Township of Texas, subject to the one-hundred (100) year flood, which is identified as

---

[5] Section 201 of the FPMA, 32 P.S. §679.201.

[6] Section 202 of the FPMA, 32 P.S. §679.202.

[7] Section 205 of the FPMA, 32 P.S. §679.205. Both agencies also have promulgated flood plain management regulations. *See* 16 Pa. Code §§38.1-38.11; 25 Pa. Code §§106.1-106.63.

a Special Flood Hazard Area (Zone A) on the
Flood Hazard Boundary Map (FHBM) as issued
by the Federal Insurance Administration dated
November 15, 1974.

In determining the "one hundred year flood"[8] elevation,
the Township is to consider such sources as Army Corps
of Engineer reports, U.S. Geological Survey informa-
tion, U.S. Department of Agriculture Soil Conservation
Service surveys, and DER investigations. Section 3.01.
In lieu of these sources, however, the Township *may* re-
quire the applicant to determine elevations with hydro-
logic and hydraulic engineering techniques. *Id.*

The crux of Appellant's second argument before us is
that the Board should not have relied upon the Flood
Hazard Boundary Map because the map was not
"completed" and did not indicate the one hundred year
flood elevation required for regulation under the Ordi-
nance. He further asserts that the Township should per-
mit property owners to prove, on a case-by-case basis,
whether or not their property does lie within a flood
plain area. We simply cannot agree.

Appellant's application was denied by the SEO
based upon the Ordinance and the following DER regu-
lation:

§73.12 site location.

(a) A proposed absorption area having the
following characteristics shall be considered un-
suitable for the installation of an on-lot system
and a permit shall be denied where:

. . . .

---

[8] A "one hundred year flood" is a flood which will occur once
every 100 years, or has the probability of occurring 1% of the time.
*See Tohickon Valley Transfer, Inc. v. Tinicum Township Zoning
Hearing Board*, 97 Pa. Commonwealth Ct. 244, 509 A.2d 896
(1986); Section 104 of the FPMA, 32 P.S. §679.104.

(2) The area is identified by completed Federal Flood Insurance mapping as a floodway.

(3) Completed flood mapping is not available, but the soil has been mapped or identified as floodplain soil or a floodprone area.

25 Pa. Code §73.12(a) (2) and (3). We, first of all, note that contrary to Appellant's assertion, we are satisfied that the regulation does not provide divergent bases for the denial of his permit and that the SEO did not err in citing both §73.12(a) (2) and (3).

According to testimony presented before the Board, the Flood Hazard Boundary Map prepared for the Township was a preliminary map and not complete. *See* N.T. at 21, R.R. at 112a. Despite Appellant's claims, however, we do not think the SEO or the Board erred in relying on the map. As testified to by both the DER employee who advised the SEO on Appellant's application, and the SEO himself, even though the mapping had not been completed, they relied on the map as the only available source and felt bound by it. N.T. at 23 and 29, R.R. at 114a and 120a. Although the map does not indicate any elevations, including the one hundred year flood, or the floodway, we believe the map's indication of the special flood hazard area was sufficient grounds for the SEO to deny Appellant's permit under the Township's own Ordinance or 25 Pa. Code §73.12 (2).

Appellant presented evidence to the Board to establish that his property is not in a flood plain or comprised of flood prone soil, in an attempt to challenge its designation as a special flood hazard area on the incomplete Flood Hazard Boundary Map. Although the Board may require an applicant to submit extrinsic evidence, the Board is not bound to rely on such information under the Ordinance. *See* Section 3.01.

In any event, we will not resolve this obvious factual issue which has been inappropriately raised in the

present context. Under the Ordinance, an identified flood plain area may be revised or modified by the Board, but only with the prior approval of the Federal Insurance Administration. Section 3.02 of the Ordinance. Appellant also has the right to challenge the identified flood plain boundary, and after an initial determination by the Township Planning Commission, the aggrieved party may appeal to the Board. Section 3.03 of the Ordinance. Appellant did not avail himself of either avenue for relief, and we will not afford him the opportunity to contest the Flood Hazard Boundary Map in the instant appeal.

Finally, we reject Appellant's argument that even if his property lies in a flood plain, he should be permitted to install his sewage system based on the following Ordinance provision:

> Any modification, alteration, reconstruction, or improvement of any kind to an existing structure, to an extent or amount of less than fifty (50) percent of its market value, shall be elevated and/or floodproofed to the greatest extent possible.

Section 6.00(B). This provision is clearly inapplicable to the case at bar. Appellant is not modifying or improving a *structure*, but installing a brand new sewage disposal system in an area which is subject, as we have seen, to a complex system of federal, state and local regulation.

We, accordingly, affirm the trial court's conclusion that because Appellant's property is within a special flood hazard area as identified by the Flood Hazard Boundary Map, the Board's denial of his application for a sewage system was proper.[9]

---

[9] In so concluding, we need not reach the third issue raised by Appellant, namely whether he presented sufficient evidence to establish that his property was *not* in a flood plain area.

## ORDER

The order of the Wayne County Court of Common Pleas in the above-captioned proceeding is hereby affirmed.